**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Maurilio GARZA–SANCHEZ,**
**Defendant–Appellant.**

No. 99–50596.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2000.

Filed July 7, 2000.

Korey House, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Krystal N. Denley, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: WALLACE, TROTT, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

Maurilio Garza–Sanchez ("Garza") appeals his conviction of being an alien found in the United States following deportation, in violation of 8 U.S.C. § 1326. He contends that the underlying deportation was unlawful and cannot be used to support his conviction under § 1326. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that Garza validly waived the right to appeal his deportation, and cannot collaterally attack it now. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 1994, Garza was convicted of possession of a controlled substance, robbery, and possession of methamphetamine for sale. On November 7, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, commencing deportation proceedings against Garza on the basis of his 1994 conviction of possession of methamphetamine for sale. At his final deportation hearing on June 1, 1998, Garza admitted the allegations against him set forth in the Order to Show Cause, and was ordered deported. The immigration judge ("IJ") advised Garza of his right to appeal, and Garza waived it. He was deported the following day.

Less than three weeks later Garza was found in Los Angeles County. He was indicted for violation of 8 U.S.C. § 1326 on July 28, 1998. Garza moved to dismiss the indictment on the ground that the underlying deportation was unlawful. The district court denied Garza's motion, concluding that he had waived the right to appeal the deportation order, and that he therefore could not collaterally attack the deportation in this prosecution under § 1326. Garza thereafter pleaded guilty, reserving his right to challenge the denial of his motion to dismiss the indictment. This appeal followed.

## DISCUSSION

■ We review de novo a district court's decision to deny a defendant's collateral attack on a deportation proceeding. *United States v. Proa–Tovar*, 975 F.2d 592, 594 (9th Cir.1992) (en banc). A defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. *See United States v. Estrada–Torres*, 179 F.3d 776, 780 (9th Cir.1999); *see also* 8 U.S.C. § 1326(d). Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack. *See Estrada–Torres*, 179 F.3d at 780. Due process requires that, to be valid, such a waiver must be "considered and intelligent." *United States v. Mendoza–Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

■ Here, it is undisputed that Garza waived the right to appeal his order of deportation. Garza argues, however, that his waiver was not considered and intelligent because the IJ failed to inform him of possible challenges to his deportation before Garza decided to waive his right to appeal. We review de novo the validity of a waiver of appellate rights. *See United States v. Buchanan*, 59 F.3d 914, 916 (9th Cir.1995). We conclude that the IJ did all that the law required. Garza's waiver was fully informed, considered and intelligent, and therefore was valid.

### A

Garza's argument is based primarily on 8 C.F.R. § 240.49(a),[1] which provides, in part:

---

1. In their briefs, both parties cite 8 C.F.R. § 242.17. Effective April 1, 1997, however, that provision was replaced by § 240.49, as part of a comprehensive set of amendments to the INS regulations to implement the provi- sions of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub.L. No. 104–208, 110 Stat. 3009 (1996). *See* 62 Fed. Reg. 10312, 10375 (March 6, 1997); 8 C.F.R. § 240.49 (1998). Section 240.49 applies to

The immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing.

■ According to Garza, the IJ failed to comply with § 240.49 because he did not inform Garza of two possible constitutional challenges to the immigration laws which, if either were successful, would have rendered him eligible for a discretionary waiver of deportation.

First, in 1996 Congress amended 8 U.S.C. § 1182(c) to make discretionary relief from deportation unavailable to aliens who were "deportable" by reason of having been convicted of certain criminal offenses, including the drug offense to which Garza pleaded guilty. *See Estrada–Torres*, 179 F.3d at 778. The INS interpreted this amendment to bar discretionary relief only for aliens who were in deportation proceedings, but to permit relief for aliens who were in exclusion proceedings. *See id.* at 778–79. By the time of Garza's deportation hearing, some courts had ruled that this disparity of treatment between excludable and deportable aliens violated the Equal Protection Clause.[2] *See, e.g., Musto v. Perryman*, 6 F.Supp.2d 758, 762 (N.D.Ill.1998), *rev'd*, 193 F.3d 888 (7th Cir. 1999); *Avelar Cruz v. Reno*, 6 F.Supp.2d 744, 757 (N.D.Ill.), *rev'd sub nom. La-*

Guerre v. Reno, 164 F.3d 1035 (7th Cir. 1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 1157, 145 L.Ed.2d 1069 (2000); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1093 (D.Colo.1997).[3] Garza contends that § 240.49 required the IJ to advise him that he could assert a similar equal protection challenge.

Second, Garza contends that he "may have" pleaded guilty to the 1994 drug charge in reliance on the availability of a discretionary waiver under the version of § 1182(c) in effect at the time of his plea. On this basis, Garza argues that during his deportation hearing in 1998 the IJ should have advised him of a potential due process challenge to the retroactive application of the 1996 amendment to § 1182(c). It was this retroactive application of the amended version of § 1182(c) that precluded Garza from obtaining a discretionary waiver because of his earlier drug conviction. One of our decisions has since left open in dicta the possibility that "in a rare circumstance" and "under a specific factual showing that a plea was entered in reliance on the availability of discretionary waiver under § 212(c) [of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) ]," an alien may be able to establish that the 1996 amendment to § 1182(c) "has an impermissible retroactive application as to him." *Magana–Pizano v. INS*, 200 F.3d 603, 613 (9th Cir.1999).[4]

all deportation proceedings commenced before April 1, 1997, as was Garza's. With respect to the issues raised in this appeal, the differences between §§ 242.17 and 240.49 are not material.

**2.** In *Estrada–Torres*, we held that the INS was mistaken in its interpretation of the statute, and that it applied to aliens in both deportation and exclusion proceedings. 179 F.3d at 779. However, we left open the possibility of an as-applied challenge based on the INS's erroneous application of the statute. *See id.* at 779–80.

**3.** In his briefs, Garza cites two additional decisions that he says also should have triggered the IJ's duty to advise him: *Gutierrez–*

*Martinez v. Reno*, 989 F.Supp. 1205 (N.D.Ga. 1998), and *Vargas v. Reno*, 966 F.Supp. 1537 (S.D.Cal.1997). These cases, however, held that even if there was an equal protection problem, an issue that they did not reach, the petitioner was *not* entitled to relief from deportation as a remedy. *See Gutierrez–Martinez*, 989 F.Supp. at 1211; *Vargas*, 966 F.Supp. at 1547–48.

**4.** Far from making the "specific factual showing" that we suggested in *Magana–Pizano* would be required to raise this issue, Garza asserts only the vague claim that he "may have" pleaded guilty in reliance on the availability of a discretionary waiver, and points to no evidence whatsoever that he in fact did rely on the availability of such a waiver.

The issue, therefore, is whether § 240.49 required the IJ to inform Garza of these potential constitutional challenges to the immigration laws.

Where a regulation's meaning is plain and unambiguous, we must construe it to give effect to that meaning. *See Crown Pac. v. Occupational Safety & Health Review Comm'n,* 197 F.3d 1036, 1038 (9th Cir.1999); *Cabrera v. Martin,* 973 F.2d 735, 745 (9th Cir.1992). This rule is dispositive of the issue at hand.

Here, Garza's contention is inconsistent with the plain and unambiguous language of § 240.49. That regulation requires only that the IJ "inform the respondent of his or her apparent eligibility to apply for any of the *benefits enumerated in this paragraph*" (emphasis added). These enumerated benefits are all statutory grounds for relief from deportation found in the immigration laws.[5] A potential constitutional challenge to the immigration laws themselves is not among them. We may not read into this regulation a requirement that it does not impose by its precise terms.

We conclude that § 240.49 did not require the IJ to inform Garza of potential constitutional challenges to the immigration laws.[6]

## B

Garza contends that even if § 240.49 did not require the IJ to inform

him of possible constitutional challenges to his deportation, the Due Process Clause did. We disagree. Garza cites no authority for the proposition that an alien's waiver of the right to appeal a deportation order is invalid unless the IJ informed him or her of every potential ground for relief, including possible constitutional challenges to the deportation laws.

Garza's position is vague in principle and unworkable in practice. Consider, for example, Garza's contention that the IJ should have advised him of a potential equal protection challenge because three courts in various jurisdictions had ruled favorably on such challenges in the past. What if only one court had ruled favorably? What if there were challenges pending in some courts, but no decision had yet been made? What if the possibility of such a challenge had only been suggested in a law review note? What if no one had suggested the possibility of such a challenge, but the IJ might have thought of it? These examples illustrate the potentially expansive and open-ended obligations of an IJ that might follow from Garza's contention. *Cf. Michelson v. INS,* 897 F.2d 465, 468 (10th Cir.1990) (stating that IJ "not required to construct elaborate theories, marshal obscure facts and develop an arguable basis for relief from deportation").

Established legal principles and case authority point to the conclusion that the

---

**5.** Those benefits are enumerated as follows:

The respondent may apply to the immigration judge for suspension of deportation under section 244(a) of the [Immigration and Nationality] Act; for adjustment of status under section 245 of the Act, or under section 1 of the Act of November 2, 1966, or under section 101 or 104 of the Act of October 28, 1977; or for the creation of a record of lawful admission for permanent residence under section 249 of the Act.... In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the respondent is inadmissible under any provision of section 212(a) of the Act and believes that he or she meets the eligibility requirements for a waiver of

the ground of inadmissibility, he or she may apply to the immigration judge for such waiver.

8 C.F.R. § 240.49.

**6.** In his briefs, Garza also appears to argue that the IJ should have informed him that he might have been eligible for a discretionary waiver of deportation under 8 U.S.C. § 1182(c), even absent any constitutional infirmity. This contention lacks merit. As indicated above, by the time deportation proceedings were commenced against Garza, § 1182(c) had been amended, rendering Garza ineligible for a discretionary waiver because of his prior conviction for methamphetamine possession. *See Magana–Pizano,* 200 F.3d at 606.

Due Process Clause does not require the IJ to advise of potential constitutional challenges. We have held, for example, that an IJ's failure to advise an alien of the right to appeal the amount of bail imposed did not render invalid his subsequent waiver of appeal. *See United States v. Corrales–Beltran*, 192 F.3d 1311, 1318 (9th Cir.1999). Similarly, the Fifth Circuit has held that "[f]ailure to ensure that a potential deportee knows and fully understands each and every one of his rights under I.N.S. regulations is not a deprivation of fundamental fairness." *United States v. Palacios–Martinez*, 845 F.2d 89, 92 (5th Cir.1988).

 When considering similar challenges to the validity of appeal waivers during deportation proceedings, we also have observed that Rule 11 of the Federal Rules of Criminal Procedure may provide pertinent analogy. *See United States v. Chavez–Huerto*, 972 F.2d 1087, 1089 (9th Cir.1992). Rule 11 does not require a court, before accepting a guilty plea, to enumerate for the defendant every possible defense and ground for appeal that she or he is foregoing by pleading guilty. *See* Fed.R.Crim.P. 11(c); *see generally* 1A Charles A. Wright, *Federal Practice and Procedure, Criminal* §§ 171–75. Such a plea results in the waiver not only of the right to appeal, but also of the fundamental rights against self-incrimination, to trial by jury, and to confront one's accusers. *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In *United States v. Solano–Godines*, 120 F.3d 957 (9th Cir.1997), we stated that because deportation proceedings are civil in nature, the "full panoply of . . . procedural and substantive safeguards which are provided in a criminal proceeding are not required." *Id.* at 960–61 (internal quotation and citation omitted). If the judge need not advise about legal theories and defenses before accepting a guilty plea in a criminal prosecution, then it follows that due process does not require an IJ to do so before accepting admissions of facts supporting deportability and waiver of appeal in a deportation proceeding.

### CONCLUSION

For all of the above reasons, we hold that the IJ had no duty to advise Garza of the potential constitutional challenges Garza describes. Garza's waiver was considered and intelligent, and therefore valid.

AFFIRMED.