MEMORANDUM AND ORDER
 

 BREYER, District Judge.
 

 Now before the Court is defendant’s motion to dismiss the charge against him. Defendant Lorenzo David Andrade-Parti-da is charged with one count of illegal reentry in violation of 8 U.S.C. § 1326. Defendant was deported from the United States on November 26, 1996, and was found in the country again in 1999. He alleges that his 1996 deportation hearing was fundamentally unfair because the presiding immigration judge effectively denied him the right to appeal his deportation order to the Board of Immigration Appeals and the federal court of appeals.
 

 BACKGROUND
 

 Defendant entered the United States in the 1970’s, and has lived in this country for most of his life. Prior to his deportation, he was convicted of three felonies in the United States: (1) in 1991, for receiving stolen property; (2) in 1994, for accessory;
 
 *1262
 
 and (3) in 1996, for felon in possession of a firearm.
 

 Defendant was deported in November 1996 after a mass deportation hearing involving 21 other aliens. At the hearing, the immigration judge (“IJ”) spoke to the aliens in English with the assistance of a Spanish interpreter. The IJ spoke to the group concerning the nature of the proceedings and offered individual hearings for those aliens who did not wish to be deported immediately. He explained that each individual had the right to present evidence and witnesses, and that the aliens could avoid deportation if eligible for certain types of relief. The IJ then explained the rights of the aliens to counsel and asked if anyone wished to retain an attorney. One individual indicated that he did, and the IJ granted a continuance of his case. The remaining aliens, including defendant Andrade-Partida, indicated by their silence that they wished to proceed without counsel.
 

 The IJ went on to explain the rights of the aliens to appeal any adverse decision, and then confirmed that each individual had received a notice of his appeal rights. The IJ asked the aliens whether they understood the right to appeal, and, by a show of hands, they all indicated in the affirmative.
 

 The IJ then granted a continuance to one individual who claimed that he had received defective notice and to another who indicated his desire to claim citizenship through his parents. The IJ then interviewed each of the remaining aliens individually.
 

 Defendant Andrade-Partida was the third individual questioned by the IJ. Defendant admitted his criminal history, and the IJ concluded that defendant was not eligible for voluntary departure. The IJ ordered immediate deportation, and then asked defendant whether he wanted to accept the decision or appeal. Defendant stated that he would accept the decision. He was deported shortly thereafter.
 

 On January 5,1999, defendant was again found in the United States. He was indicted on October 27, 1999, and filed this motion on February 16, 2000.
 

 DISCUSSION
 

 I. Statutory and Regulatory Background
 

 Defendant argues that his deportation hearing did not comport with due process because he was effectively denied the right to appeal the IJ’s decision. Defendant bases his argument on the interplay of three immigration laws: 8 U.S.C. § 1326(d), 8 U.S.C. § 1182(c) and 8 C.F.R. § 242.17(a). A brief explanation of the these three laws will clarify defendant’s position.
 

 A. Section 1326(d)
 

 Section 1326 provides criminal sanctions for aliens who reenter the country after being deported. Subsection (d) of that provision permits a defendant to collaterally attack his deportation order in the later criminal case. However, to successfully challenge his deportation order, a defendant must demonstrate that (1) he was deprived of his right to judicial review as a result of defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.
 
 See United States v. Corrales-Beltran,
 
 192 F.3d 1311, 1316 (9th Cir.1999).
 

 In
 
 United States v. Mendoza-Lopez,
 
 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court explained that, in order to serve as the predicate for a later criminal conviction, an administrative deportation hearing must meet certain minimum constitutional requirements. The Court held that
 

 where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.... De
 
 *1263
 
 priving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of the criminal offense.
 

 Id.
 
 at 838-39, 107 S.Ct. 2148. The Ninth Circuit later explained that there may be times when the deportation proceedings are “so flawed that effective judicial review will be foreclosed.”
 
 United States v. Proa-Tovar,
 
 975 F.2d 592, 595 (9th Cir.1992).
 

 In 1996, Congress responded to the Court’s mandate by amending section 1326. Subsection (d) of that provision now precludes a defendant from collaterally attacking his deportation order unless (1) he exhausted any administrative remedies that were available to seek relief against the order; (2) the deportation proceeding improperly denied him the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). To determine whether section 1326(d) prevents collateral attack, the district court must examine the underlying deportation hearing to determine whether the deportee was denied the right to judicial review.
 

 Although an alien in a deportation hearing may waive his right to appeal his deportation order, any such waiver must be “considered and intelligent.”
 
 United States v. Lopez-Vasquez,
 
 1 F.3d 751, 754 (9th Cir.1993). If the waiver is not voluntary, the deportee has been deprived of his right to due process in the deportation hearing.
 
 Id.
 
 The Ninth Circuit has explained that a waiver of appeal is not valid where the immigration judge seeks a mass waiver by silence from a group of aliens,
 
 United States v. Gonzalez-Mendoza,
 
 985 F.2d 1014, 1017 (9th Cir.1993), or where an attorney representing a large group of aliens waives the appellate rights of the entire group without any individualized discussion.
 
 Proa-Tovar,
 
 975 F.2d at 594. Even if the immigration judge explains the right to appeal to the aliens as a group, the waiver is insufficient unless the judge asks each deportee individually whether he wants to waive his appellate rights.
 
 See United States v. Zarate-Martinez,
 
 133 F.3d 1194, 1197 (9th Cir.1998). The Ninth Circuit has instructed that the Court should “indulge every reasonable presumption against waiver.”
 
 Lopez-Vasquez,
 
 1 F.3d at 753 (quoting
 
 Barker v. Wingo,
 
 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).
 

 B. Section 212(c)
 

 The second statute relevant to defendant’s motion is section 212(c) of the Immigration and Naturalization Act, codified at 8 U.S.C. § 1182(c). Prior to the passage of the Antiterrorism and Effective Death Penalty Act (“AEDPA”), section 212(c) permitted the Attorney General to grant relief from deportation to certain aliens.
 
 See Castillo-Felix v. INS,
 
 601 F.2d 459, 462 (9th Cir.1979). Specifically, section 212(c) gave the Attorney General discretion to grant relief to an alien who had been a lawful permanent resident of the United States for seven years and for whom equity demanded relief from deportation.
 
 See Lovell v. INS,
 
 52 F.3d 458, 461 (2d Cir.1995). In determining whether to grant relief, the Attorney General balanced a number of factors, including the deportee’s criminal record, family relationships, employment history, community service and moral character.
 
 See id.
 

 In 1996, Congress passed the AEDPA, which severely restricted the availability of discretionary relief from orders of deportation. Specifically, the AEDPA eliminated the availability of discretionary relief to aliens who had been convicted of certain crimes.
 
 [1]
 
 As discussed below, the parties
 
 *1264
 
 dispute whether the AEDPA amendments should be applied in defendant’s case.
 

 C.
 
 INS Regulations: 8 C.F.R. § 242.17
 

 Finally, defendant argues that 8 C.F.R. § 242.17(a) is also relevant in this case. According to that regulation, an IJ must “inform the respondent [in a deportation hearing] of his apparent eligibility to apply for any benefits [of relief from deportation] enumerated in this paragraph and ... afford him an opportunity to make an application therefor during the hearing.” 8 C.F.R. § 242.17(a)
 
 [2]
 
 ;
 
 Moran-Enriquez v. Immigration and Naturalization Service,
 
 884 F.2d 420 (9th Cir.1989). This regulation creates a mandatory duty in the IJ to discuss possible relief whenever the alien “puts information before the judge that makes such eligibility ‘apparent.’”
 
 Moran-Enriquez,
 
 884 F.2d at 422. The Ninth Circuit has read the term “apparent eligibility” to mean that “where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws — as IJs no doubt are — raises a reasonable possibility that the petitioner may be eligible for relief,” the IJ must address the issue with the deportee.
 
 Id.
 
 at 423.
 

 II. Application to this Case
 

 Defendant argues that these three laws — section 1326(d), section 212(c) and 8 C.F.R. section 242.17(a) — combine in a unique way in this case to establish that his 1996 deportation was not valid. Essentially, defendant argues that, at the time of his deportation hearing in 1996, he was eligible for relief under section 212(c), and that section 240.17 required the IJ to inform him of this eligibility. The IJ’s failure to do so, defendant argues, effectively deprived him of his right to seek judicial review, thereby permitting a collateral attack on the current indictment pursuant to 8 U.S.C. § 1326(d). Based on the record before the Court, the Court concludes that, due to the errors in the November 1996 deportation hearing, defendant did not knowingly and intelligently waive his appellate rights, and that this failure caused prejudice to defendant.
 

 A. Due Process Violation
 

 The Court must first determine whether the IJ’s failure to explain section 212(c) relief to defendant constituted a due process violation. As explained below, the Court concludes that it did.
 

 1. Eligibility for section 212(c) Relief
 

 First, defendant argues that, at the time of his deportation hearing, he was eligible for discretionary relief under section 212(e). The government contends that defendant was
 
 not
 
 eligible for relief under section 212(c) in November 1996 for two reasons. First, under the AEDPA amendments described above, defendant was statutorily ineligible for discretionary relief. Second, even if defendant was not automatically precluded from discretionary relief under the AEDPA, he could not have demonstrated the equitable requirements to merit section 212(c) relief. After considering the record, the Court rejects each of these arguments, and concludes that defendant was eligible for relief under section 212(c) in November 1996.
 

 
 *1265
 

 a. AEDPA Amendments to Section 212(c)
 

 First, the government argues that defendant was ineligible for section 212(c) relief as a matter of law pursuant to the AEDPA. As noted above, the AEDPA amended section 212(c) to preclude the application of discretionary relief to aliens who are deportable for committing certain types of criminal offenses. Specifically, section 440(d) of the AEDPA forecloses the application of section 212(c) waiver in the case of any alien who has been convicted of a firearms offense covered by 8 U.S.C. § 1251(a)(2)(C), which is now codified at 8 U.S.C. § 1227(a)(2)(C). Defendant Andrade-Partida was found by the IJ to be deportable for committing just such an offense.
 
 [3]
 
 Therefore, if the AEDPA applied to defendant’s deportation proceedings, defendant would not have been eligible for discretionary relief. If so, the IJ’s failure to inform him about section 212(c) cannot have been error. Accordingly, the Court must now determine whether the AEDPA should have applied to defendant’s November 1996 deportation hearing.
 

 The government urges that the AED-PA’s provisions should have applied to defendant during his deportation proceedings in November 1996. The AEDPA’s amendments of section 212(c) went into effect on April 24, 1996.
 
 See Magana-Pizano v. I.N.S.,
 
 200 F.3d 603, 606 (9th Cir.1999). Defendant pled guilty to the firearms offense for which he was deported on March 21, 1996, approximately one month
 
 prior to
 
 the AEDPA’s effective date. His deportation hearing was held on November 26, 1996, seven months
 
 after
 
 the AEDPA’s effective date.
 

 In
 
 Magana-Pizano,
 
 the Ninth Circuit addressed the question of whether the AEDPA’s provisions should apply to aliens in defendant’s situation: those individuals whose deportation proceedings are initiated after April 24, 1996, but who are deportable due to a guilty plea entered prior to April 24, 1996. In
 
 Magana-Pizano,
 
 the court held that, as a general rule, the AEDPA does apply to aliens who have pled guilty to a crime prior to the AED-PA’s enactment date but whose deportation proceedings did not begin until after the enactment date.
 
 Id.
 
 at 613. However, the court recognized that many aliens enter into plea bargains or plead guilty to criminal charges in reliance upon representations regarding the potential immigration consequences of their pleas.
 
 Id.
 
 at 612-613. To guard against the unfair consequences of such reliance, the court held that the AEDPA “should not apply to aliens ... who can demonstrate that they entered guilty or nolo contendere pleas in reliance upon the relief afforded by INA § 212(c),” which was later withdrawn by the AEDPA amendments.
 
 Id.
 
 at 614. Absent such a “specific factual showing that a plea was entered in reliance on the availability of discretionary waiver under § 212(c),” the AEDPA should be applied in an alien’s subsequent post-AEDPA deportation proceedings.
 
 Id.
 
 at 613-614.
 

 In accordance with these principles, this Court must determine whether defendant pled guilty to possession of a firearm on March 21, 1996 in reliance on the availability of section 212(c) waiver. If he did
 
 not
 
 so rely, then he was ineligible for section 212(c) relief at the time of his deportation.
 

 To that end, the Court heard testimony on August 18, 2000 regarding the circumstances surrounding defendant’s 1996 conviction. Specifically, the Court heard testimony from defendant and from the Ralph Latza, the attorney who represented defendant in the 1996 criminal case. Defendant testified that he met with Mr. Latza twice prior to pleading guilty in 1996. At the second meeting, Mr. Latza advised defendant to plead guilty to the charges against him. Defendant accepted Mr. Lat-
 
 *1266
 
 za’s advice, and, during the same meeting, completed and signed an “advisement of rights” form. The form contained a provision acknowledging that defendant’s conviction could potentially result in deportation.
 

 Upon reading the section of the form which discussed the potential deportation consequences of his plea, defendant asked Mr. Latza for an explanation. Mr. Latza responded that defendant “shouldn’t be concerned about it.” Defendant, relying on this advice, signed the form and pled guilty to the charges against him. In his testimony before this Court, defendant explained that, because of Mr. Latza’s advice, he believed that his guilty plea would not result in his deportation. While defendant feared that his guilty plea might make it more difficult to apply for American citizenship in the future, he did not believe that he would be deported. Defendant believed that his long-time residence in this country, his long-held green card, and his extensive family ties in this country would prevent any deportation. Defendant further testified to this Court that, had he understood that the INS would initiate deportation proceedings leading to his deportation, he would not have pled guilty to the firearms charges against him.
 

 Defendant’s testimony is largely corroborated by the testimony of Mr. Latza. Although Mr. Latza does not recall any specific interactions with defendant, he recently reviewed defendant’s 1996 client file. On the front page of the file, Mr. Latza’s office had erroneously noted that defendant was a United States citizen. With this file in front of him, it is both likely and understandable that Mr. Latza would have encouraged defendant not to “be concerned about” the potential immigration consequences of his guilty plea.
 
 [4]
 
 Therefore, the Court concludes that Mr. Latza’s testimony strongly supports defendant’s recollection of the attorney-client discussion that occurred on March 21, 1996.
 

 A review of defendant’s and Mr. Latza’s testimony reveals that defendant did rely on the availability of section 212(c) relief when he entered his March 1996 guilty plea. Although defendant may not have understood the precise nature of the discretionary remedy, he believed that he would not be deported precisely because of his long-term ties to this country. It is entirely likely that defendant understood at the time of his guilty plea that the conviction
 
 could
 
 have resulted in deportation, but that he believed he would surely escape that consequence due to his long-term residence and ties to the United States. In other words, defendant pled guilty in reliance on the availability of pre-AEDPA relief
 
 from
 
 deportation. The fact that defendant signed the advisement of rights form is entirely consistent with this conclusion.
 

 Applying the principles enunciated in
 
 Magana-Pizano,
 
 the Court concludes that the AEDPA did not apply to defendant’s November 1996 deportation proceedings. ■ Therefore, defendant was not statutorily precluded from receiving section 212(c) relief at his deportation hearing.
 

 b. Equitable Factors in Section 212(c) Relief
 

 The government next argues that, even if the AEDPA amendments do not statutorily preclude the application of section
 
 *1267
 
 212(c) in defendant’s case, he was nonetheless ineligible for discretionary relief because he could not have demonstrated that the equities favored such relief. Again, the Court cannot agree.
 

 Section 212(c) required that the IJ consider a number of factors in determining whether waiver of deportation was appropriate.
 
 See Lovell,
 
 52 F.3d at 461. The provision permitted a waiver of deportation if the INS found that “social and humane considerations presented in an applicant’s favor” outweighed “adverse factors that evidenced] the applicant’s undesirability as a permanent resident.”
 
 Paredes-Urrestarazu v. INS,
 
 36 F.3d 801, 806 (9th Cir.1994). For instance, if defendant had applied for section 212(c) relief, the IJ would have considered defendant’s “family ties within this country, residence of long duration in this country, evidence of hardship .to the alien and alien’s family upon deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation.”
 
 Lovell,
 
 52 F.3d at 461 (quoting
 
 Matter of Marin,
 
 16 I. & N. Dec. 581, 584-85 (BIA 1978)). In addition, the IJ would have also considered “the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien’s bad character or undesirability as a permanent resident.”
 
 Id.
 

 The government argues that defendant was not eligible for section 212(c) relief in 1996 because his deportation did not pose a threat of “extreme hardship.” The Court disagrees. First, the Court notes that section 212(c), unlike section 244(a) of the INA, did not require a showing of “extreme hardship” by the alien in order to permit waiver of deportation.
 
 See Lovell,
 
 52 F.3d at 461. Therefore, the parties’ citations to cases discussing the “extreme hardship” standard of section 244(a) are not dispositive in determining defendant’s eligibility for section 212(c) relief. Second, defendant’s familial and cultural connections in the United States indicate that he may have merited section 212(c) waiver in 1996. Defendant had lived in the United States since his childhood, and, at the time of his deportation, he provided support and child care for his United States citizen wife and their three minor children. These circumstances indicate that defendant had plausible grounds for relief under section 212(c) in November 1996.
 
 See Kahn v. INS,
 
 36 F.3d 1412, 1414 (9th Cir.1994) (“[T]he existence of substantial family ties in the United States is a weighty factor in the support of the favorable exercise of discretion under § 212(c)”);
 
 Georgiu v. INS,
 
 90 F.3d 374, 376 (9th Cir.1996) (noting that alien’s “numerous family ties constitute a significant factor in his favor” in section 212(c) determination).
 

 The Court notes that defendant need not establish that he actually would have been granted section 212(c) relief if he had applied for the relief in November 1996.
 
 See United States v. Arce-Hernandez,
 
 163 F.3d 559, 563 (9th Cir.1998). Rather, defendant needs only to make a “plausible” showing that the facts of his case would have caused the Attorney General to exercise discretion in his favor.
 
 Id.
 
 Considering defendant’s connections to the United States, the length of his residence in this country and the potential hardship threatened by his imminent deportation, the Court concludes that defendant had “plausible grounds for relief from deportation” under section 212(c) at the time of the hearing.
 
 Id. See also Cerrillo-Perez v. INS,
 
 809 F.2d 1419 (1987) (separation from family can be considered “extreme hardship” justifying relief under section 244(a));
 
 De La Luz v. INS,
 
 713 F.2d 545, 546 (9th Cir.1983) (in determining existence of “extreme hardship” under section 244(a), BIA should consider hardship to deportee’s children if separated from their
 
 *1268
 
 parent, and “any consequent costs for the care and placement of the children at public expense”).
 

 2. IJ’s Obligation under 8 C.F.R. section 242.17(a)
 

 In light of defendant’s potential eligibility for section 212(c) relief, the IJ had an obligation to inform him of the possibility of relief. As discussed above, section 242.17(a) required the IJ to inform an alien about discretionary relief whenever the alien’s eligibility for such relief is apparent.
 

 The government contends that defendant’s eligibility for section 212(c) relief in this case was not “apparent.” The government points out that defendant never informed the IJ that he was married to a citizen of the United States, that he had three citizen children or that deportation would impose a severe hardship on his family. Rather, defendant merely answered the IJ’s questions and accepted his order of deportation. According to the government, defendant’s responses to the IJ at his hearing did not make his eligibility “apparent.” The Ninth Circuit has noted that “Us are not expected to be clairvoyant; the record before them must fairly raise the issue: Until the alien himself or some other person puts information before the judge that makes such eligibility ‘apparent,’ this duty does not come into play.”
 
 Moran-Enriquez,
 
 884 F.2d at 422 (quoting
 
 Bu Roe v. INS,
 
 771 F.2d 1328, 1334 (9th Cir.1985)) (internal quotations omitted). The government asserts that, because the IJ was not on notice of defendant’s potential eligibility, the duty to discuss relief under section 242.17(a) was never triggered.
 

 The Court disagrees with the government’s conclusions. While it is true that the IJ need not raise the issue of discretionary relief if the alien’s eligibility is not apparent, “section 242.17(a) is obviously meant to prompt the IJ to help an alien explore legal avenues of relief that might not be apparent to him or his attorney. By definition, this will involve situations where the alien does not have the wherewithal to make a complete showing of eligibility.”
 
 Moran-Enriquez,
 
 884 F.2d at 423. Even if the alien’s eligibility is not “clearly disclosed” in the record, the IJ has a duty to discuss discretionary relief with the alien so long as the record as a whole raises “a reasonable possibility” of eligibility for such relief.
 
 Id.
 
 In this case, the transcript of defendant’s deportation hearing indicates that the IJ knew that defendant had entered the United States when he was eight years old, that he had lived in this country for 16 years, that he spoke fluent English, and that he became a permanent legal resident in 1988. These facts should have indicated to the IJ that defendant might have been eligible for discretionary relief under section 212(c). Because defendant had resided in the United States for the majority of his youth and the entirety of his adult life, the IJ should have recognized that he would probably face hardship if deported.
 

 For this reason, the Court concludes that defendant’s potential eligibility for section 212(c) relief was apparent at the time of his deportation hearing. The IJ’s failure to raise the issue with defendant constituted a violation of 8 C.F.R. section 242.17(a).
 

 3. Involuntary Waiver of Appellate Rights
 

 Finally, the Court concludes that the IJ’s failure to alert defendant of his eligibility for section 212(c) relief makes his subsequent waiver of appellate rights involuntary. Because he was not aware of the possibility of discretionary relief, defendant’s waiver of appeal could not have been “considered and intelligent.”
 

 The Ninth Circuit has determined that an IJ’s failure to advise a deportee of his potential eligibility for relief from deportation can constitute a procedural defect sufficient to preclude later conviction under section 1326.
 
 See United States v. Arce-
 
 
 *1269
 

 Hernandez,
 
 163 F.3d 559 (9th Cir.1998). As noted above, the duty of the IJ to inform an alien of his eligibility for relief is mandatory, and the failure to do so can constitute a violation of the alien’s due process rights.
 
 See Moran-Enriquez,
 
 884 F.2d at 422.
 
 But cf. United States v. Sanchez-Peralta,
 
 1998 WL 63405 (Feb. 13, 1998 S.D.N.Y.).
 

 During its final oral presentation to the Court on August 18, 2000, the government relied on
 
 United States v. Garza-Sanchez,
 
 217 F.3d 806 (9th Cir.2000), to argue that
 
 Moran-Enriquez
 
 is no longer good law in this Circuit. The government’s reading of
 
 Garza-Sanchez
 
 is inaccurate. The defendant in
 
 Garza-Sanchez,
 
 faced with criminal charges under section 1326, argued that the IJ at his deportation hearing should have informed him of potential constitutional challenges to his deportation.
 
 Id.
 
 at 810. The defendant argued that the IJ’s failure to inform him of a potential equal protection challenge to the deportation statute violated the regulatory mandate to inform aliens of potential grounds for relief from deportation.
 
 Id.
 
 The
 
 Garza-Sanchez
 
 court rejected this argument, pointing out that the governing regulations required only that the IJ inform aliens of certain potential
 
 statutory
 
 grounds for relief from deportation, such as section 212(c) relief.
 
 Id.
 
 The IJ had no duty to inform the alien of a potential
 
 constitutional
 
 challenge to his deportation.
 
 Id.
 

 Despite the government’s argument to the contrary, the Court finds
 
 Garza-Sanchez
 
 entirely inapposite to this case. Defendant in this case bases his collateral attack upon thfe IJ’s failure to inform him of his potential eligibility for
 
 statutory
 
 relief under section 212(c). Defendant does not allege that he could have challenged his deportation on constitutional grounds, nor that the IJ failed to advise him on the possibility of such a challenge. In other words, defendant’s case falls squarely within the holding of
 
 Moran-Enriquez
 
 and squarely outside the holding of
 
 Garza-Sanchez.
 

 The IJ’s failure to properly advise defendant of his potential eligibility for section 212(c) relief violated 8 C.F.R. § 240.17. Following the holding of
 
 Moran-Enriquez,
 
 the Court concludes that this error constituted a violation of defendant’s right to due process.
 

 B. Did the Violation Effectively Foreclose Judicial Review?
 

 Having determined that the IJ failed to properly advise defendant of his rights and that, as a result, defendant’s waiver of his right to appeal to the BIA was not considered and intelligent, the Court must next determine whether that error effectively foreclosed defendant’s right to judicial review.
 

 As noted above, both
 
 Mendoza-Lopez
 
 and section 1326(d) permit collateral attack on a prior deportation when the administrative hearing that led to the deportation improperly foreclosed judicial review.
 
 See
 
 8 U.S.C. § 1326(d);
 
 Mendoza-Lopez,
 
 481 U.S. at 837, 107 S.Ct. 2148. Section 1326(d) precludes collateral attack of a deportation order unless three requirements are met: (1) defendant exhausted his administrative remedies in 1996; (2) defendant was improperly deprived of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). The discussion, above, of section 212(c) and section 242.17(a) addresses the first and third requirements of section 1326(d). In light of that discussion, the Court concludes that the first requirement of section 1326(d) should be waived in this case because defendant was not adequately informed of his right to appeal to the BIA. Because of the IJ’s error, defendant unintelligently waived his administrative remedies.
 
 See Garza-Sanchez,
 
 217 F.3d at 808. Additionally, following
 
 Moran-Enriquez,
 
 the Court concludes that section 1326(d)’s third requirement has been met. Considering that the IJ neglected his mandatory
 
 *1270
 
 duty to inform defendant of the possible availability of discretionary relief, and recognizing that defendant had a plausible case for that relief, the Court concludes that the entry of the deportation order was fundamentally unfair.
 

 This leaves only the second requirement of section 1326(d). The Court must determine whether, as a result of the IJ’s error, defendant was improperly denied the opportunity to seek judicial review. The Court concludes that he was.
 

 In addressing this question, the Court first turns to the transitional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (“IIRIRA”), which governed defendant’s deportation hearing. The IIRIRA severely restricted the availability of judicial review of deportation proceedings. The Act was passed on September 30, 1996, and became effective on April 1, 1997. The IIRIRA’s transitional rules apply to final orders of deportation entered after October 30, 1996, but before the effective date of the IIRIRA. This includes defendant’s deportation order, which was issued on November 26,1996.
 
 [5]
 

 The transitional rules severely limited the availability of judicial review over the Attorney General’s discretionary decisions. Specifically, the rules mandated that “there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of enactment of this Act).” IIRIRA § 309(c)(4)(E). In other words, the transitional rules withdrew jurisdiction from the federal courts to review discretionary decisions of the BIA.
 
 See Requena-Rodriguez v. Pasquarell,
 
 190 F.3d 299, 305 (5th Cir.1999).
 

 The government argues that, because the IIRIRA withdrew the power of the federal courts to review the BIA’s discretionary decisions under section 212(c), any error that occurred at defendant’s deportation hearing could not have deprived defendant of his right to judicial review. While the IJ’s error may have caused defendant to unintelligently waive his right to appeal the decision to the BIA, that error alone does not permit collateral attack under section 1326(d). Section 1326(d) and
 
 Mendoza-Lopez
 
 permit collateral attack of a prior deportation only if the IJ’s error foreclosed defendant’s ability to seek
 
 judicial
 
 review.
 
 See Mendoza-Lopez,
 
 481 U.S. at 839, 107 S.Ct. 2148 (permitting collateral challenge only “where the deportation proceeding effectively eliminates the right of an alien to obtain
 
 judicial review.”)
 
 (emphasis added);
 
 Lopez-Vasquez,
 
 1 F.3d at 753 (same). In this case, the government argues, the IJ’s error deprived defendant of his access to
 
 administrative,
 
 not
 
 judicial,
 
 review.
 

 Because of the application of the IIRI-RA’s transitional rules, defendant had no right at all to judicial review of the IJ’s discretionary decision to grant or deny section 212(c) relief. At most, therefore, the IJ’s actions denied defendant access to
 
 administrative
 
 review by the BIA. For this reason, the government concludes that defendant cannot satisfy the second prong of section 1326(d), and that he is therefore precluded from collaterally attacking his conviction.
 

 
 *1271
 
 The government’s argument is very compelling, but it contains a crucial flaw. While the transitional rules of the IIRIRA deprived the federal courts of some of their ability to review section 212(c) denials, the transitional rules did not entirely foreclose judicial review. Under the transitional rules, the federal courts retained jurisdiction to review the BIA’s initial determinations of eligibility for discretionary relief.
 
 See Kalaw v. INS,
 
 133 F.3d 1147, 1150-1152 (9th Cir.1997). For example, in
 
 Kalaw,
 
 a group of aliens sought to appeal the INS’s denial of waiver of deportation pursuant to INA section 244. Section 244, like section 212(c), permitted the Attorney General to grant an alien relief from deportation if that alien had been physically present in the United States for a continuous period of seven years or more and met certain other criteria. INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (now repealed). Like section 212(c), the Anal decision in any individual case under section 244 was left in the discretion of the Attorney General.
 
 See Kalaw,
 
 133 F.3d at 1151. As with section 212(c) waiver, the transitional rules of the IIRIRA withdrew from the federal courts the jurisdiction to review the BIA’s discretionary section 244 decisions. 8 U.S.C. § 1229(a).
 

 In
 
 Kalaw,
 
 the Ninth Circuit held that, while the final discretionary decision to grant or deny section 244 relief is not reviewable, the underlying determination of eligibility for relief
 
 is reviewable,
 
 despite the proscriptions of the IIRIRA.
 
 Id.
 
 at 1151. The court reasoned that the question of whether an alien had been continuously present in the country for seven years “must be determined from the facts, not through an exercise of discretion. Either the petitioner has been continuously present in the United States for seven years or the petitioner has not.”
 
 Id.
 
 Thus, the court concluded, “the transitional rules of judicial review provided in IIRIRA § 309(c)(4)(E), reprinted in 8 U.S.C. § 1101 notes,
 
 do not remove appellate jurisdiction
 
 over an alien’s challenge to the BIA’s denial of an application” for discretionary relief.
 
 Id.
 
 (emphasis added).
 
 See also Lafarga v. INS,
 
 170 F.3d 1213, 1215 (9th Cir.1999) (explaining that “the application of a statutory provision is not a ‘discretionary decision,’ but rather, an application of the law” which the circuit court retained jurisdiction to review under the IIRIRA’s transitional rules).
 

 In this case, the IJ’s fundamental error prevented defendant from applying for section 212(c) relief. For that reason, the IJ’s error denied defendant the opportunity to seek judicial review. To be sure, if defendant had applied for' section 212(c) relief, the IJ and the BIA may have concluded that he was statutorily eligible for the requested relief, but that he did not merit discretionary treatment. If the IJ or the BIA had reached that conclusion, defendant would not have had the right to appeal the decision to the federal courts. On the other hand, the IJ may have erroneously concluded that defendant was statutorily
 
 ineligible
 
 for the requested relief — ■ perhaps because of his firearms conviction, or perhaps because he had not resided in the United States for a sufficient continuous period. If the IJ had reached that conclusion, defendant would have had the right to appeal the decision to the BIA and to the court of appeals.
 

 One can only guess at what might have occurred had the IJ not neglected his mandatory duty under section 242.17(a). The only conclusion that the Court can reach with certainty is that the IJ’s error deprived defendant of the opportunity to apply for certain relief, the denial of which may have created an issue for appeal in federal circuit court. In other words, the IJ’s failure to comply with section 242.17(a) effectively deprived defendant of his right to judicial review. For that reason, the Court concludes that defendant has satisfied the second prong of section 1326(d).
 

 C. Conclusion
 

 In sum, defendant has met the requirements of section 1326(d). First, defen
 
 *1272
 
 dant’s waiver of administrative remedies was not knowing and intelligent because the IJ neglected his mandatory duty to address the availability of section 212(c) relief. Second, the IJ’s failure improperly denied defendant the opportunity for both administrative and judicial review. Finally, the entry of the deportation order was fundamentally unfair. Put another way, the Court finds that defendant’s 1996 deportation was tainted by a due process violation, and that the violation prejudiced defendant by foreclosing his opportunity for judicial review.
 

 CONCLUSION
 

 Because defendant has satisfied his burden under 8 U.S.C. § 1326(d) and
 
 United States v. Mendoza-Lopez,
 
 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Court finds that he has successfully collaterally attacked his 1996 deportation. Accordingly, for the reasons explained herein, the Court hereby GRANTS defendant’s motion to dismiss the indictment in this matter.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Section 440(d) amends 8 U.S.C. § 1182(c) to provide:
 

 Aliens lawfully admitted for permanent residence who temporarily proceeded
 
 *1264
 
 abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section....
 
 This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title,
 
 or any offense covered by section 125 l(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.
 

 8 U.S.C. § 1182(c) (emphasis added).
 

 [2]
 

 . While section 242.17(a) applied at the time of defendant’s deportation hearing, the regulation has since been replaced by 8 C.F.R. § 240.11(a)(2).
 

 [3]
 

 . The Order to Show Cause issued by the United States in defendant’s case explained that defendant was subject to deportation pursuant to section 241(a)(2)(C) of the INA, codified at 8 U.S.C. § 1227(a)(2)(C).
 

 [4]
 

 . Although it is relatively clear that Mr. Latza probably did not have potential section 212(c) relief in mind when he advised defendant in 1996, Mr. Latza’s state of mind is not pivotal to the Court's inquiry in this case. Rather, the Court must determine whether defendant himself relied on the potential availability of section 212(c) relief. Defendant, who could not have anticipated that clerical error that precipitated Mr. Latza’s advice to him, reasonably believed that his guilty plea would have no deportation consequences because of his ties to the United States. Regardless of Mr. Lalza's state of mind, the Court finds that defendant relied on the existence of section 212(c) relief in deciding to plead guilty to the firearms charges against him.
 

 [5]
 

 . In his initial reply brief to this Court, defendant argues that his case was not governed by the transitional rules because his deportation proceedings were initiated on September 11, 1996. Because the initial order to show cause in his case was issued prior to the effective date of the transitional rules, defendant argues that his case was not governed by the IIRIRA. However, defendant's argument is based on an incorrect interpretation of the law. The IIRIRA transitional rules applied to all
 
 final orders
 
 of deportation entered after October 30, 1999.
 
 See Kalaw v. INS,
 
 133 F.3d 1147, 1150 (9th Cir.1997). In this case, although the INS issued an order to show cause in September 1996, the final deportation order was not entered until nearly a month after the effective date of the transitional rules. For this reason, the IIRIRA’s transitional rules governed defendant’s 1996 deportation.