**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vidal GARCIA–CONTRERAS,**
**Defendant–Appellant.**

**No. 99–10537.**
**D.C. No. CR–98–00193–DFL.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 8, 2001.[1]

Decided Jan. 22, 2001.

---

1. The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

**756**

Before GOODWIN, GRABER, and PAEZ, Circuit Judges.

## MEMORANDUM [2]

Defendant Vidal Garcia–Contreras was indicted for a violation of 8 U.S.C. § 1326(a), which prohibits being "found in" the United States after having been deported. He moved to dismiss the indictment, and the district court denied his motion. A jury found Defendant guilty, and the district court sentenced him to 88 months in prison followed by 36 months of supervised release. Defendant appeals from the denial of his motion to dismiss and from his sentence.

## DISCUSSION

I.  *Because Defendant waived his appeal, his challenge to the validity of the underlying deportation proceeding fails.*

A defendant charged with illegal reentry under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she failed to exhaust administrative remedies that were available during the deportation proceeding, including direct appeal of the deportation order. 8 U.S.C. § 1326(d)(1); *United States v. Estrada–Torres*, 179 F.3d 776, 780 (9th Cir.1999). "Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack." *United States v. Garza–Sanchez*, 217 F.3d

---

**2.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

806, 808 (9th Cir.2000). To be valid, a deportee's waiver must be "knowing and voluntary." *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1085 (9th Cir. 1996).

■ Here, Defendant knowingly and voluntarily waived his right to appeal. At Defendant's deportation hearing, the Immigration Judge (IJ) explained the right to appeal. Then, after conducting an individual hearing with Defendant and concluding that Defendant was deportable, the IJ asked Defendant if he wanted to appeal. Defendant expressly and unequivocally stated that he did not. Defendant's waiver was sufficient. *See Estrada–Torres,* 179 F.3d at 781 (holding that, "[b]ecause the immigration judge explained the right to appeal to Estrada–Torres (with the other deportees) and individually asked him specifically if he wanted to appeal his deportation order, his waiver of his right to appeal was 'considered and intelligent' ").

We reject Defendant's arguments to the contrary. *First,* the deportation hearing was not defective simply because the IJ addressed the detainees as a group during parts of the hearing; *Estrada–Torres* establishes that a deportee may be informed of rights in a group setting, so long as he or she expressly waives the right to appeal in response to an "individual" and "specific" question. *Id. Second,* the IJ's colloquy with Defendant was not so confusing as to render Defendant's waiver ineffective. *Finally,* Defendant's waiver was not involuntary merely because the IJ did not inform him that he might be eligible for discretionary relief under *Magana–Pizano v. INS,* 200 F.3d 603 (9th Cir.1999). *Garza–Sanchez,* 217 F.3d at 810.

II. *The district court did not err in sentencing Defendant under the 1998 version of the Guidelines.*

■ As a general matter, a defendant is sentenced under the version of the Guidelines that is in effect at the time of sentencing. *United States v. Guzman–Bruno,* 27 F.3d 420, 422 (9th Cir.1994). However, if a sentencing provision has been changed to provide for longer sentences between the time the offense is committed and the time of sentencing, then the sentencing court uses the version of the Guidelines that was in effect at the time the crime was committed. *Id.*

Defendant was sentenced on October 6, 1999. The district court sentenced him under the 1998 Guidelines, which were in effect at that time. Defendant received a longer sentence under the 1998 Guidelines than he would have under the 1995 Guidelines. He argues that the 1995 Guidelines should apply because this version was in effect at the time he committed the crime.

■ We disagree. "The offense of being found in the United States ends when an alien is discovered and identified by the immigration authorities." *United States v. Hernandez,* 189 F.3d 785, 791 (9th Cir. 1999). The relevant date is not the date on which the alien illegally enters the United States, but the date on which he or she was "found in" the United States by the INS. *Id.*

■ Here, Defendant was interviewed in state prison by an INS agent on December 5, 1997. As far as the record reveals, that was the first contact between Defendant and the immigration authorities after his illegal reentry. The indictment. states that Defendant was found in the United States on December 5, 1997, as does the judgment. The 1998 Guidelines took effect on November 1, 1997. Thus, the 1998 Guidelines were in effect both on the date Defendant committed the crime and on the date he was sentenced. The district court correctly used the 1998 Guidelines.

III. *Defendant's sentence was not unlawful under Apprendi.*

Finally, Defendant argues that his sentence was unlawful under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This court recently rejected the same arguments that Defendant presents in this appeal. *United States v. Pacheco–Zepeda,* 234 F.3d 411, 414–15 (9th Cir.2000).

AFFIRMED.