UNITED STATES of America,
Plaintiff–Appellee,

v.

Marcelo ESTRADA–TORRES,
Defendant–Appellant.

No. 98–50251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1999.

Filed June 7, 1999.

Benjamin L. Coleman, Federal Defender, San Diego, California, for the defendant-appellant.

Natalie J. Villaflor and Samuel W. Bettwy, Assistant United States Attor-neys, San Diego, California, for the plaintiff-appellee.

Before: HUG, Chief Judge,
BROWNING, Circuit Judge, and ZILLY,[1] District Judge.

PER CURIAM:

Marcelo Estrada–Torres seeks dismissal of his indictment for illegally entering the United States in violation of 8 U.S.C. § 1326. Alternatively, he argues that the district court erred by imposing a sixteen-level sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A).

I.

Estrada–Torres entered the United States in the late 1980s and became a legal permanent resident soon thereafter. In August 1996, he pled guilty to violating Cal. Health & Safety Code § 11360(a) (unlawful transportation, importation, sale, or gift of marijuana). On October 4, 1996, he was served with an Order to Show Cause and Notice of Hearing alleging he was deportable because he had been convicted of violating a law relating to a controlled substance. *See* 8 U.S.C. § 1251(a)(11) (1997) (amended and transferred to 8 U.S.C. § 1227(a)(2)(B)).

At a deportation hearing held on October 10, 1996, an immigration judge ordered Estrada–Torres deported. On May 1, 1997, Estrada–Torres was arrested by California police for drinking in public. On August 20, 1997, he was indicted as a previously deported alien found in the United States under 8 U.S.C. § 1326(a) and (b)(2).[2] He entered a conditional

---

1. The Honorable Thomas S. Zilly, District Judge, United States District Court for the Western District of Washington, sitting by designation.

2. Section 1326 provides in pertinent part:

(a) Subject to subsection (b) of this section, any alien who (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter [ ](2) enters, at-

guilty plea, preserving various issues for appeal.

On appeal, Estrada–Torres argues that (1) his underlying deportation order violated his right to equal protection, (2) use of that deportation order in his subsequent prosecution for illegal entry violated his right to due process, and (3) the district court erred in increasing his base offense level.

## II.

Estrada–Torres argues that he was denied equal protection guaranteed by the Due Process Clause of the Fifth Amendment because legal permanent residents in deportation proceedings like himself were not permitted to apply for discretionary relief pursuant to 8 U.S.C. § 1182(c) (1997), although similarly situated legal permanent residents in exclusion proceedings were permitted to apply for such relief.[3] We disagree.

As originally enacted, 8 U.S.C. § 1182(c) (1952) permitted discretionary relief for certain excludable aliens. However, the Board of Immigration Appeals (BIA) applied 8 U.S.C. § 1182(c) (1952) to legal permanent residents in deportation proceedings who had temporarily left the United States and returned, see Matter of G–A–, 7 I & N Dec. 274, 1956 WL 10272 (BIA July 19, 1956), although not to those who had never left the United States. See Arias–Uribe v. INS, 466 F.2d 1198, 1199–200 (9th Cir.1972).

The Second Circuit held there was no rational basis for treating legal permanent residents in deportation proceedings who had never left the United States different-

ly than those who had left temporarily and sought to return. See Francis v. INS, 532 F.2d 268, 273 (2d Cir.1976). We followed the Second Circuit, stating the statute, as interpreted by the BIA, "create[d] a distinction that lack[ed] a rational basis." Tapia–Acuna v. INS, 640 F.2d 223, 225 (9th Cir.1981). We held that " § 1182(c) relief cannot constitutionally be denied to an otherwise eligible alien who is deportable...." Id.

In 1990, Congress amended 8 U.S.C. § 1182(c) to make discretionary relief unavailable to legal permanent residents who had been convicted of one or more aggravated felonies and served a term of imprisonment of at least five years. See 8 U.S.C. § 1182(c) (1991). The 1990 amendment made no distinction between legal permanent residents in deportation proceedings and those in exclusion proceedings.

Effective April 24, 1996, Congress amended 8 U.S.C. § 1182(c) to make discretionary relief unavailable to legal permanent residents "who [are] deportable by reason of having committed any criminal offense covered [by various subsections of 8 U.S.C. § 1251(a)(2) ]" 8 U.S.C. § 1182(c) (1997) (emphasis added). In May 1997, the BIA held that the use of the term "deportable" meant the 1996 amendment barring discretionary relief applied only to legal permanent residents in deportation proceedings, reinstating the distinction between legal permanent residents in deportation and exclusion proceedings that had been rejected uniformly by federal courts following the Francis decision fifteen years earlier. See In re Samuel Fuentes–Campos, Int. Dec. 3318, 1997 WL 269368

8 U.S.C. § 1326(a), (b)(2).

3. Ordinarily, Estrada–Torres could not collaterally attack his deportation order unless he had exhausted his administrative remedies by appealing to the Board of Immigration Appeals. See 8 U.S.C. § 1326(d). The government waived this argument with respect to Estrada–Torres' equal protection claim, but not his due process claim.

tempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection ... (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both....

(BIA May 14, 1997). Estrada–Torres argues that 8 U.S.C. § 1182(c), as interpreted by the BIA, violates his equal protection rights.[4]

■ We defer to the BIA's interpretation of immigration laws unless the interpretation is "demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute." *Bui v. INS*, 76 F.3d 268, 269–70 (9th Cir.1996). With regard to 8 U.S.C. § 1182(c), we agree with a number of district courts which have found the BIA's interpretation clearly contrary to the plain meaning of that statute. *See, e.g., Walters v. Reno*, 16 F.Supp.2d 166, 170 (D.P.R.1998); *Vargas v. Reno*, 966 F.Supp. 1537, 1545 (S.D.Cal.1997); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1093 (D.Colo.1997).

According to 8 U.S.C. § 1251(a), which contains the criminal offenses referred to in 8 U.S.C. § 1182(c), the definition of deportable aliens includes all classes of excludable aliens. Thus, the plain language of 8 U.S.C. § 1182(c) applies both to aliens who have never left the United States as well as to aliens who have left for only a short period of time. *See Vargas*, 966 F.Supp. at 1545. Moreover, 8 U.S.C. § 1182 is titled "Excludable Aliens." Therefore, it makes no sense to apply 8 U.S.C. § 1182(c) to bar discretionary relief to aliens in deportation proceedings while allowing such relief to aliens in exclusion proceedings.

■ We completely agree with the following analysis of the district court in *Vargas:*

When read together, the clear intent of [§ 1182(c) and § 1251] is to treat legal permanent aliens who have left briefly as if they had never left. They are to be treated like aliens residing continuously in the United States rather than like aliens who have never been admitted to the United States and seek to enter. Since they are to be treated like aliens residing in the U.S., the INS is to analyze whether they meet the deportability sections of the statute rather than the excludability sections of the statute. Whether the INS calls the proceeding an exclusion proceeding or a deportation proceeding is irrelevant. Congress has clearly stated that legal permanent resident aliens who reside in the United States and who have gone abroad temporarily cannot receive a waiver if they committed an offense which renders them deportable.

*Vargas*, 966 F.Supp. at 1545–46. We therefore conclude that the 1996 amendment eliminates discretionary relief for both excludable and deportable legal permanent residents, and does not violate the Equal Protection Clause on its face.

Estrada–Torres also argues that 8 U.S.C. § 1182(c) (1997) is unconstitutional as applied to him.[5] Estrada–Torres' deportation proceeding took place on October 10, 1996, and he did not appeal his deportation order to the BIA. The BIA did not decide *Fuentes–Campos* and begin applying 8 U.S.C. § 1182(c) (1997) to prohibit discretionary relief for deportable aliens until May 14, 1997. Since legal permanent residents in deportation proceedings were

---

4. Effective April 1, 1997, 8 U.S.C. § 1182(c) (1997) was repealed and a new provision adopted which unambiguously bars discretionary relief for legal permanent residents in either exclusion and deportation proceedings who commit one of the specified crimes, including drug crimes such as Cal. Health & Safety Code § 11360(a), thus eliminating the potential problem raised in this case. *See* 8 U.S.C. § 1229b. Only deportation orders issued in the period between April 24, 1996 (the effective date of the 1996 amendment), and April 14, 1997 (the effective date of the 1997 amendment) were potentially subject to this

challenge. The 1997 amendment does not affect Estrada–Torres' deportation order which was issued on October 10, 1996.

5. Many district courts have held 8 U.S.C. § 1182(c) (1997) is unconstitutional as applied by the BIA in *Fuentes–Campos*. *See Vargas*, 966 F.Supp. at 1547 (stating that it is the application of the statute by the BIA that violates equal protection); *Walters*, 16 F.Supp.2d at 170 (same); *Almon v. Reno*, 13 F.Supp.2d 143, 146 (D.Mass.1998) (same); *Greene*, 977 F.Supp. at 1093 (same).

not treated differently than legal permanent residents in exclusion proceedings before Estrada–Torres' deportation order was final, 8 U.S.C. § 1182(c) (1997) was not unconstitutionally applied to him.[6]

## III.

■ During his criminal prosecution for illegal entry, Estrada–Torres attempted to collaterally attack his deportation order for insufficiency of evidence to sustain the charge of deportability. The district court held collateral review was barred for failure to exhaust administrative remedies as required by 8 U.S.C. § 1326(d)(1) (1997). It is undisputed that Estrada–Torres did not appeal his deportation order to the BIA, and he therefore failed to exhaust his administrative remedies. He contends, however, that this statutory exhaustion requirement, combined with the bar to direct judicial review of his deportation order under 8 U.S.C. § 1105a(a)(10),[7] violates his right to due process.

In 1987, the Supreme Court held that the right to due process requires collateral review of a deportation order used as an element of a criminal offense if "the deportation hearing effectively eliminates the right of the alien to obtain judicial review...." *See United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). In *Mendoza–Lopez*, the Supreme Court concluded that the defendants did not effectively waive their right to appeal because the defendants' waivers were not "considered and intelligent." The Supreme Court further concluded that the defendants' due process rights were violated because their ineffective waivers effectively eliminated their right to obtain judicial review of the deportation order. *See Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148; *see also United States v. Zarate–Martinez*, 133 F.3d 1194, 1197 (9th Cir.1998).

In 1996, Congress codified, at least in part, the constitutional standards governing collateral attacks established in *Mendoza–Lopez* in 8 U.S.C. § 1326(d).[8] The statute requires an alien to exhaust any administrative remedies before collaterally attacking his deportation order. The plain language of the 8 U.S.C. § 1326(d) does not require a "considered and intelligent" waiver of a defendant's right to appeal. However, as stated in *Mendoza–Lopez*, this requirement is mandated by the Due Process Clause. *See Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148.

**6.** Estrada–Torres argues that even though the BIA had not decided *Fuentes–Campos* when he had his deportation hearing, some immigration judges were permitting aliens in exclusion proceedings, but not aliens in deportation proceedings, to seek discretionary relief under 8 U.S.C. § 1182(c) (1997). However, Estrada–Torres did not submit any evidence that the immigration judge presiding at his deportation hearing was permitting aliens in exclusion proceedings to seek discretionary relief. Also, even though different immigration judges may have interpreted 8 U.S.C. § 1182(c) (1997) differently, it was not until the BIA decided *Fuentes–Campos* that the Immigration and Naturalization Service began applying 8 U.S.C. § 1182(c) (1997) to prohibit only deportable aliens from seeking discretionary relief.

**7.** When Congress amended 8 U.S.C. § 1326(d)(1) to recognize the limited availability of collateral review of a deportation order, it also cut off the availability of direct judicial review by providing that "any final judicial review by providing that "any final order of deportation against an alien who is deportable by reason of having committed a criminal offense [such as Estrada–Torres'] shall not be subject to review by any court." 8 U.S.C. § 1105a(a)(10); *see also Duldulao v. INS*, 90 F.3d 396 (9th Cir.1996) (interpreting 8 U.S.C. § 1105a(a)(10)).

**8.** In 1996, Congress added subsection (d) to 8 U.S.C. § 1326, which states:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that—

(1) *the alien exhausted any administrative remedies* that may have been available to seek relief against the order;

(2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (1997) (emphasis added).

Citing *Zarate–Martinez* and *United States v. Lopez–Vasquez*, 1 F.3d 751 (9th Cir.1993), Estrada–Torres argues that his waiver was not "considered and intelligent" because he was not properly informed of his right to appeal. In *Zarate–Martinez*, we held that informing and explaining the right to appeal to deportees as a group, without asking each deportee individually if he wants to appeal, is not sufficient. *See Zarate–Martinez*, 133 F.3d at 1197–98. In *Lopez–Vasquez*, we held that a mass silent waiver of the right to appeal a deportation order to the BIA did not satisfy due process requirements. *See Lopez–Vasquez*, 1 F.3d at 754.

Estrada–Torres' case is distinguishable from *Zarate–Martinez* and *Lopez–Vasquez*. Even though the immigration judge addressed the deportees as a group when he discussed the right to appeal the deportation order, he also asked Estrada–Torres individually, "Do you accept the decision or wish to appeal?" Because the immigration judge explained the right to appeal to Estrada–Torres (with the other deportees) and individually asked him specifically if he wanted to appeal his deportation order, his waiver of his right to appeal was "considered and intelligent." Because Estrada–Torres' waiver of his appeal to the BIA was valid, the exhaustion requirement in 8 U.S.C. § 1326(d)(1) (1997) does not violate his right to due process.

### IV.

■ The district court applied U.S.S.G. § 2L1.2(b)(1)(A), finding Estrada–Torres' Cal. Health & Safety Code § 11360(a) conviction was an "aggravated felony," and increased Estrada–Torres' base offense level by sixteen levels.[9] Estrada–Torres argues the district court erred in applying

U.S.S.G. § 2L1.2(b)(1)(A) because a violation of Cal. Health & Safety Code § 11360(a) is not an "aggravated felony." We consider de novo whether the aggravated felony provision is applicable. *See United States v. Fuentes–Barahona*, 111 F.3d 651, 652 (9th Cir.1997).

The term "aggravated felony" is defined as including "*illicit trafficking in a controlled substance* ...." 8 U.S.C. § 1101(a)(43)(B). If Cal. Health & Safety Code § 11360(a) encompassed "illicit trafficking in a controlled substance," Estrada–Torres committed an "aggravated felony."

■ In deciding whether a defendant committed an aggravated felony, "the issue is not whether [the defendant's] actual conduct constituted an aggravated felony, but whether the *full range of conduct* encompassed by [the statute the defendant violated] constitutes an aggravated felony." *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir.1994) (emphasis added). In *Lomas*, we held that violation of an almost identical California statute (Cal. Health & Safety Code § 11352(a)) prohibiting the transportation or sale of cocaine was "illicit trafficking in a controlled substance," and thus "an aggravated felony" under 8 U.S.C. § 1326(b)(2). Following the reasoning in *Lomas*, we hold that any violation of Cal. Health & Safety Code § 11360(a) is "illicit trafficking in a controlled substance," and thus an "aggravated felony." Therefore, the district court properly increased Estrada–Torres' base offense.

AFFIRMED.

---

9. The sentencing guidelines provide the following specific offense characteristics:
(1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

(A) If the conviction was for an *aggravated felony*, increase by **16** levels.
(B) If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by **4** levels.
U.S.S.G. § 2L1.2(b) (emphasis added).