**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICIA ANN CORDES,
    *Petitioner-Appellant,*

v.

ALBERTO R. GONZALES,* Attorney
General; Tom Ridge, Secretary of
the Department of Homeland
Security; Nancy Alcantar, Interim
Director of the San Francisco
District Office for the Bureau of
Immigration and Customs
Enforcement; Rosemary Wahl,
Commander of the Kern County
Pretrial Facility,
    *Respondents-Appellees.*

No. 04-15988

D.C. No.
CV-03-05580-
OWW/LJO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
April 11, 2005—San Francisco, California

Filed August 10, 2005

Before: Warren J. Ferguson, John T. Noonan, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Ferguson;
Partial Concurrence and Partial Dissent by Judge Rymer

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States. Fed. R. App. P. 43(c)(2).

10275

## COUNSEL

Jagdip Singh Sekhon (argued), Sekhon & Sekhon, San Francisco, California; Scott Mossman (briefed), Sekhon & Sekhon, San Francisco, California, for the petitioner-appellant.

James Hunolt (argued), Department of Justice, Washington, D.C.; Audrey B. Hemesath (briefed), Office of the United States Attorney, Sacramento, California, for the respondents-appellees.

## OPINION

FERGUSON, Circuit Judge:

Patricia Ann Cordes ("Cordes"), a native and citizen of the United Kingdom, appeals the District Court's denial of her 28 U.S.C. § 2241 habeas petition challenging the constitutionality of her final order of removal. Cordes pled guilty to dissuading a witness with threat of force and to inducing false testimony, in violation of sections 136.1(c)(1) and 137(c) of

the California Penal Code, respectively. The Board of Immi-
gration Appeals ("BIA") determined that Cordes's conviction
constituted an aggravated felony under the amended defini-
tion of aggravated felony in section 321 of the Illegal Immi-
gration Reform and Immigrant Responsibility Act
("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (Sept.
30, 1996), and ordered her removed.

On appeal, Cordes contends that the District Court erred
when it (1) applied retroactively the amended definition of
aggravated felony under sections 321(a)(3) and 321(a)(11) of
IIRIRA; (2) rejected her due process challenge to the retroac-
tive application of the amended aggravated felony definition;
and (3) denied her equal protection challenge to the unavaila-
bility of relief from removal under section 212(c) of the
Immigration and Nationality Act ("INA"), Pub. L. No. 82-
414, 66 Stat. 163 (June 27, 1952) (hereinafter, "section
212(c)").[1]

We find that like the petitioner in *United States v. Velasco-
Medina*, 305 F.3d 839 (9th Cir. 2002), *cert. denied*, 540 U.S.
1210 (2004), Cordes does not fit within the exception to sec-
tion 304(b) of IIRIRA set forth in *INS v. St. Cyr*, 533 U.S. 289
(2001). Cordes could not have had settled expectations as to
the continued availability of section 212(c) relief at the time
she entered her guilty plea for non-deportable offenses
because the passage of section 440(d) of the Antiterrorism
and Effective Death Penalty Act ("AEDPA"), Pub. L. No.
104-32, 110 Stat. 1214 (April 24, 1996), predated her convic-

---

[1]Section 212(c) provided that "[a]liens lawfully admitted for permanent
residence who temporarily proceeded abroad voluntarily . . . and who are
returning to a lawful unrelinquished domicile of seven consecutive years,
may be admitted in the discretion of the Attorney General . . . ." 8 U.S.C.
§ 1182(c) (repealed 1996).

The BIA has interpreted this provision "to authorize any permanent res-
ident with a lawful unreliquished domicile of seven consecutive years to
apply for a discretionary waiver from deportation." *INS v. St. Cyr*, 533
U.S. 289, 295 (2001) (internal quotation marks and citations omitted).

tion. In addition, we conclude that the retroactive application of the amended aggravated felony definition under section 321 of IIRIRA is supported by a rational basis, and therefore does not violate the Due Process Clause of the Constitution.

Nevertheless, we sustain Cordes's equal protection challenge because the current judicially defined limits to the availability of section 212(c) relief post-IIRIRA, as applied by the Bureau of Immigration and Customs Enforcement,[2] create an irrational result, namely affording discretionary relief from removal to legal permanent residents who have committed worse crimes than similarly situated permanent residents like Cordes.

## I. JURISDICTION

While this case was pending, Congress enacted the Real ID Act of 2005, Pub. L. No. 109-13, 199 Stat. 231, 310-11 (amending 8 U.S.C. § 1252) (May 11, 2005). The Act amends the INA by eliminating federal habeas jurisdiction in favor of petitions for review that raise "constitutional claims or questions of law." *Id.* at § 106(a)(1). Although the Act applies retroactively, *see id.* at § 106(b), its application to pending appeals is uncertain. *See id.* at § 106(c) (providing a procedure only for the transfer of petitions currently before the district courts). It is unclear, for example, whether Congress intended for the Act to affect habeas petitions where judgment has already been entered by a district court. But we need not resolve this issue here because we would treat the appeal in the same manner were it a petition for review under section 106. That is, we would still review the merits of Cordes's

---

[2]As of March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist and its enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement within the Department of Homeland Security. *See* Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). For ease of reference, however, we refer to the applicable government agency as the INS.

constitutional claims. We thus proceed to decide this case under 28 U.S.C. § 2253, as an appeal from the denial of a habeas petition.

## II.   BACKGROUND AND PROCEDURAL HISTORY

Cordes was born on May 9, 1952 in Scotland. She entered the United States legally at the age of eighteen and became a permanent resident on February 3, 1972. Since then, she has lawfully resided in the United States and has raised four U.S. citizen children. In the over thirty years that she has been in the United States, she has left the country only a handful of times to visit her mother in Scotland.

On May 30, 1996, Cordes pled guilty to dissuading a witness from testifying with threat of force and inducing false testimony. The circumstances of Cordes's offenses involved attempting to persuade her daughter—a victim of molestation —to retract allegations against Cordes's former boyfriend. Cordes was sentenced to two years in prison followed by probation. As of her conviction date, Cordes's offenses were misdemeanors and did not constitute an aggravated felony or subject her to deportation. Accordingly, Cordes was ineligible for section 212(c) relief since it was only available for permanent residents who faced deportation.

On April 24, 1996, one month *before* Cordes's conviction, Congress passed section 440(d) of AEDPA, which made all persons designated as aggravated felons ineligible for section 212(c) relief. On Cordes's conviction date, May 30, 1996, section 440(d) of AEDPA had no effect on her deportability because the offenses to which she pled guilty did not constitute an aggravated felony and, thereby, posed no deportation consequences.

On September 30, 1996, four months *after* Cordes's conviction, Congress passed IIRIRA. Section 321 of IIRIRA expanded the definitions of aggravated felonies in 8 U.S.C.

§§ 1101(a)(43)(F) and 1101(a)(43)(S). For crimes of violence, the required minimum term of imprisonment imposed was lowered from 5 years to 1 year. IIRIRA § 321(a)(3). Similarly, an "offense relating to obstruction of justice, perjury, or subornation of perjury, or bribery of a witness," which formerly required a potential sentence of 5 years imprisonment or more to qualify as an aggravated felony, was changed to require a term of imprisonment of "at least one year." IIRIRA § 321(a)(11). Moreover, section 304(b) of IIRIRA repealed section 212(c) relief altogether and replaced it with cancellation of removal, a more limited form of discretionary waiver from removal, which was also made unavailable to aggravated felons. *See* 8 U.S.C. § 1229b(a).

On December 17, 1996, having been released from custody, Cordes was arrested for violating section 23152(a) of the California Vehicle Code, driving under the influence of alcohol. She was convicted of the offense on February 19, 1997, and her probation was reinstated. On October 10, 2000, Cordes again violated probation for driving under the influence of alcohol. This time her probation was revoked and she was returned to state custody.

On January 31, 2001, the INS brought removal proceedings against Cordes, charging her as an aggravated felon under the new IIRIRA reclassification of aggravated felony. The INS contended that (1) her offenses at the time of her May 30, 1996 guilty plea now could be recharacterized as constituting an aggravated felony, (2) she was consequently ineligible for section 212(c) relief under section 440(d) of AEDPA since she was an aggravated felon, and (3) she was further ineligible for cancellation of removal under section 304(b) of IIRIRA as an aggravated felon.

On October 10, 2001, an Immigration Judge ("IJ") ordered Cordes removed from the United States but granted her section 212(c) relief because, in the IJ's view, she fit within an exception to section 304(b) of IIRIRA that the Supreme Court

carved out in *St. Cyr.* 533 U.S. 289. There, the Supreme Court held that section 212(c) relief was available for aliens who were eligible for such relief at the time of their convictions and who relied on this relief in entering guilty pleas. The INS timely appealed the IJ's order, and on February 21, 2003, the BIA overruled the IJ's decision and found Cordes deportable and ineligible for section 212(c) relief in accordance with this Circuit's decision in *Velasco-Medina.* 305 F.3d 839.

When Cordes challenged the BIA's decision, 8 U.S.C. § 1252(a)(2)(C) precluded direct appellate review of a BIA's removal decision for "a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Cordes, therefore, filed a 28 U.S.C. § 2241 habeas petition in the District Court on May 10, 2004 asking for a stay of removal. Specifically, she challenged the retroactive application of sections 321(a)(3) and 321(a)(11) of IIRIRA and raised an equal protection challenge. The District Court denied her petition on April 8, 2004, and this appeal timely followed.

## III. DISCUSSION

We review de novo the District Court's decision to deny Cordes's habeas petition. *Singh v. Ashcroft*, 351 F.3d 435, 438 (9th Cir. 2003) (citation omitted). Accordingly, we conduct the same inquiry as the District Court. We must decide the merits of Cordes's constitutional claims.

### A. *Retroactivity*

Cordes first challenges the retroactive application of sections 321(a)(3) and 321(a)(11) of IIRIRA and the resulting unavailability of section 212(c) relief under *St. Cyr.* 533 U.S. 289.

**[1]** Sections 321(a)(3) and 321(a)(11) of IIRIRA reduced the sentencing requirement for an "aggravated felony" from "at least 5 years" to "at least one year." Section 321(b) of

IIRIRA made the amended definition of aggravated felony retroactive, "appl[ying] regardless of whether the conviction was entered before, on, or after [September 30, 1996]." This Circuit subsequently upheld the retroactive application of sections 321(a)(3) and 321(a)(11) of IIRIRA. *See Aragon-Ayon v. INS*, 206 F.3d 847, 853 (9th Cir. 2000) ("We are satisfied that Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed, and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order.").

**[2]** The repeal of section 212(c) by section 304(b) of IIRIRA, however, was not made explicitly retroactive. Aliens who had relied upon the existence of section 212(c) relief in pleading guilty to a crime remain entitled to its protection even after its elimination under section 304(b) of IIRIRA. Indeed, in *St. Cyr*, the Supreme Court held that "[section] 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [such] relief at the time of their plea under the law then in effect." 533 U.S. at 326. Enrico St. Cyr had pled guilty to a state law drug offense ten years after becoming a U.S. permanent resident. *Id*. at 293. His guilty plea rendered him deportable, so he was eligible for section 212(c) relief under pre-IIRIRA law. *Id.* Before the INS could bring removal proceedings against him, however, Congress passed section 440(d) of AEDPA and section 304(b) of IIRIRA, which effectively precluded granting St. Cyr section 212(c) relief because he had committed a crime that had been reclassified as an aggravated felony. *Id.* at 297. Because he had expected to be eligible for section 212(c) relief when he pled guilty, the Supreme Court held that he was eligible for such relief in spite of the new legal landscape. *Id.* at 321.

**[3]** This Circuit has clearly limited the *St. Cyr* exception. In *Velasco-Medina*, we held that section 212(c) relief was

unavailable for an alien who pled guilty after the enactment of section 440(d) of AEDPA but before the enactment of IIRIRA. 305 F.3d 839. The court first reasoned that, unlike St. Cyr, Velasco-Medina had not developed "settled expectations" in section 212(c) relief because he was not deportable, and therefore ineligible for section 212(c) relief, at the time of his plea bargain. *Id.* at 849. The court went on to note that "[Section 440(d)] of AEDPA provided Velasco-Medina with fair notice that discretionary relief under [section] 212(c) would be unavailable in the event his conviction was reclassified as an aggravated felony. To the extent [Velasco-Medina] anticipated the continued availability of [section] 212(c) relief after his guilty plea, his expectations were neither reasonable nor settled under *St. Cyr*." *Id.* at 850.

**[4]** Like Velasco-Medina, Cordes pled guilty to her offenses after the passage of section 440(d) of AEDPA and could not have been eligible for section 212(c) relief because at the time of her conviction her offenses did not render her deportable. Moreover, as it did for Velasco-Medina, section 440(d) of AEDPA placed Cordes on notice that if her conviction were reclassified as an aggravated felony, she would be ineligible for section 212(c) relief. Thus, Cordes's expectations as to the continued availability of section 212(c) relief were, like those of Velasco-Medina, neither reasonable nor settled under *St. Cyr*.[3]

---

[3]Cordes contends that this Circuit's opinion in *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003), undermines the holding in *Velasco-Medina* by applying the *St. Cyr* exception to a defendant who had not committed a deportable offense at the time of her conviction. Like Cordes, Leon-Paz's conviction became an aggravated felony as a direct consequence of section 321 of IIRIRA. 340 F.3d at 1005-06. Again the inquiry turned on whether Leon-Paz had expected to be eligible for section 212(c) relief at the time that he entered his plea. The panel found that he did because he could not have been aware of the unavailability of section 212(c) relief in the event that his crime would be reclassified as an aggravated felony since section 440(d) of AEDPA had not yet been passed. *Id.* at 1006-07. Here, the passage of section 440(d) of AEDPA predated Cordes's conviction, so *Leon-Paz* is distinguishable.

B. *Due Process*

Cordes next contends that sections 321(a)(3) and 321(a)(11) of IIRIRA retroactively reclassified her from a permanent resident to a removable aggravated felon without any rational basis and without furnishing her any fair notice or repose.

[5] The Due Process Clause of the Fifth Amendment forbids Congress from enacting legislation expressly made retroactive when the " 'retroactive application [of the statute] is so harsh and oppressive as to transgress the constitutional limitation.' " *Welch v. Henry*, 305 U.S. 134, 147 (1938). Due process "protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

[6] While this court has held that section 321 of IIRIRA overcomes the presumption against retroactive legislation because "Congress has clearly manifested an intent for the amended definition of aggravated felony to apply retroactively," *Aragon-Ayon*, 206 F.3d at 851, we have not decided whether the definition's retroactive application violates due process.

[7] We agree with the Second Circuit that the retroactive application of section 321 of IIRIRA is rationally related to a legitimate governmental purpose. "Congress has a legitimate interest in protecting society from the commission of aggravated felonies . . . , and legislation that deports aliens who presently commit or who have committed those acts in the past is a rational means of furthering that interest." *Kuhali v. Reno*, 266 F.3d 93, 111 (2d Cir. 2001) (citing *Hamama v. INS*, 78 F.3d 233, 236 (6th Cir. 1996)). This conclusion comports with our decision in *United States v. Yacoubian*, 24 F.3d 1, 8 (9th Cir. 1994), which held that the retroactive application of 8 U.S.C. § 1251(a)(2)(C), as modified in 1990, to deport an alien on the basis of a 1982 firearms offense did not

violate the Due Process Clause. We reasoned that retroactive application of the amended statute was rationally related to a legitimate governmental interest because it "results in uniform application of the deportation provision to aliens convicted of firearms offenses, no matter when those convictions occurred." *Id*. *Yacoubian* also recognized "Congress' undoubted power to exclude undesirable aliens from this country even if that determination is made long after a crime was committed." *Id*. at 8 n.3 (citing *Mahler v. Eby*, 264 U.S. 32, 38-40 (1924); *Mulcahey v. Catalanotte*, 353 U.S. 692, 694 (1957)).[4]

## C. *Equal Protection*

Finally, Cordes brings an equal protection challenge to the INS' decision, based on *St. Cyr*, 533 U.S. 289, and *Velasco-Medina*, 305 F.3d 839, to afford section 212(c) relief to permanent residents who retroactively became aggravated felons, but who had committed deportable offenses at the time of their conviction, and not to those permanent residents who retroactively became aggravated felons, but who had not committed deportable offenses at the time of their convictions.

**[8]** The Fourteenth Amendment mandates that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This guarantee of equal protection applies to the federal government through the Fifth Amendment Due Process Clause. *See Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1152 n.5 (9th Cir. 2000) (en banc) (citation omitted) ("The Fifth Amendment has no Equal Protection Clause. An equal protection claim under the Fifth Amendment is brought under the equal protection component of the Due Process Clause.").

---

[4]Cordes relies on the concurrence in *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1051 (9th Cir. 2004) (Pregerson, J., concurring), which maintained that retroactive application of section 321 of IIRIRA violates due process. The concurrence, however, is not the law of the circuit.

**[9]** The Equal Protection Clause applies to aliens. *See Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886). The "disparate treatment of similarly situated aliens under the immigration laws" implicates the guarantee of equal protection. *Aguirre v. INS*, 79 F.3d 315, 317 (2d Cir. 1996). The government must therefore demonstrate a rational basis for treating aliens disparately. *Reno v. Flores*, 507 U.S. 292, 306 (1993). That is, a legislative classification must be " 'wholly irrational' " to violate equal protection. *Mathews v. Diaz*, 426 U.S. 67, 83 (1976).

**[10]** First, Cordes, as a permanent resident, is similarly situated to those permanent residents who are entitled to section 212(c) relief under *St. Cyr*. The only discernable difference between the two is that those entitled to section 212(c) relief faced deportation at the time they entered their guilty pleas. This difference, however, is "irrelevant and fortuitous" since Cordes quite obviously faces deportation now.[5] *See Francis v. INS*, 532 F.2d 268, 273 (2d Cir. 1976) ("Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner.").

**[11]** Second, the disparate treatment of Cordes and those permanent residents who are entitled to section 212(c) relief under *St. Cyr* lacks a rational basis. Because Cordes does not fit within the *St. Cyr* exception, the law treats her differently

---

[5]The dissent stresses how Cordes "was much better situated" than permanent residents such as St. Cyr "because she was not deportable" at the time she pled guilty to her offenses. *See dissent* at 10294. But this fact ignores entirely Cordes's present situation. Due to the retroactive application of section 321 of IIRIRA, she is now precisely in the same position as permanent residents such as St. Cyr—facing deportation because her crime has been reclassified as an aggravated felony. Indeed, Cordes should be much better situated than permanent residents such as St. Cyr. since, unlike them, she pled guilty to less severe, non-deportable offenses. The INS' disparate grant of section 212(c) relief, however, irrationally prevents this result.

than those permanent resident aliens who formed settled expectations as to the availability of section 212(c) relief because they committed severe, deportable offenses. Had Cordes committed a more severe crime—one that would have rendered her deportable—she would have been eligible for such relief and been able to preserve the relief even though her crime was later reclassified as an aggravated felony. Put differently, those permanent residents who committed more serious crimes than Cordes obtain the section 212(c) bulwark only because they had the ironic fortune of facing the prospect of deportation at the time that they entered their guilty pleas.

Both the District Court decision and dissent, *see dissent* at 10295, rely on *Taniguchi v. Schultz*, 303 F.3d 950 (9th Cir. 2002), to dismiss Cordes's equal protection challenge. *Taniguchi*, however, has nothing to do with this case. Taniguchi claimed that section 212(h) of the INA violated her right to equal protection by providing a waiver of deportation to aggravated felons who were not permanent residents while denying the same waiver to aggravated felons who were permanent residents. *Id.* at 957. The panel held that Congress had a rational basis for denying a discretionary waiver to aggravated felons who were permanent residents since they enjoyed greater privileges in the United States than aggravated felons who were not permanent residents and posed a potentially higher risk of recidivism than illegal aliens who did not have the benefits that come with permanent resident status. *Id.* at 958. *Taniguchi* foreclosed an equal protection challenge to a federal immigration scheme that treated permanent residents and non-permanent residents differently. But it did not foreclose an equal protection challenge to a federal immigration scheme that effectively treats similarly situated permanent residents differently, which is the situation here. No case in this Circuit has foreclosed such a challenge.

In fact, in *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981), we held that the INS' implementation of 8 U.S.C. § 1182(c) violated the Equal Protection Clause because it irra-

tionally granted relief from removal to those permanent residents in exclusion proceedings who left the United States temporarily and sought return, but not to those permanent residents in deportation proceedings who had never left the United States.[6] We noted that no rational purpose would be served by "giving less consideration to the alien 'whose ties with this country are so strong that he has never departed after his initial entry' than to the alien 'who may leave and return from time to time.' " *Id.* (quoting *Francis*, 532 F.2d at 273).

Moreover, in *Servin-Espinoza v. Ashcroft*, 309 F.3d 1193, 1198 (9th Cir. 2002), we again noted the irrational distinction drawn by the INS in granting section 212(c) relief to excludable aliens but not to deportable aliens. Denying section 212(c) relief to deportable aliens "contraven[ed] equal protection" because it disrupted the rational purpose of immigration law to "treat[ ] aliens who are already on our soil (and who are therefore deportable) more favorably than aliens who are merely seeking admittance (and who are therefore excludable)." *Id.*

**[12]** Both *Tapia-Acuna* and *Servin-Espinoza* are relevant authority here. These cases sustained equal protection challenges to the INS' policy of selectively granting discretionary relief from removal. Our case should do no differently. The INS has the burden of justifying why Cordes should be removed in spite of her permanent resident status. *See* H.R. Rep. No. 104-879, at 107-09 (1997) (*available in* 1997 WL 9288 p.258-262) ("[I]n the case of a long-term permanent resident of the U.S., the burden [is] on the Government to establish why the alien should be removed."). But the INS cannot

---

[6]Effective April 1, 1997, Congress repealed 8 U.S.C. § 1182(c) and adopted a new provision which unambiguously bars discretionary relief for permanent residents in either exclusion or deportation proceedings who commit one of the specified crimes in 8 U.S.C. § 1251(a)(2). Thus, the specific issue in *Tapia-Acuna* is no longer material. *See United States v. Estrada-Torres*, 179 F.3d 776, 778-79 (9th Cir. 1999).

rationally do so. Allowing permanent residents who have committed worse crimes than Cordes to apply for section 212(c) relief, while denying the same opportunity to Cordes, does not achieve Congress' express purpose behind the expanded definition of aggravated felony and its retroactive application: to expeditiously remove criminal aliens and make it more difficult for them to obtain relief from removal. *See id.* Indeed, the disparate grant of section 212(c) relief here does not increase the total number of criminal aliens subject to removal, as Congress intended, but rather perversely increases only the number of less dangerous criminals subject to removal.

[13] Finally, as the IJ correctly pointed out, equity in this case unquestionably weighs in favor of allowing Cordes to apply for section 212(c) relief.[7] Cordes has lived in the United States for over three decades and has only one relevant conviction for offenses that were misdemeanors when they were committed. She has left the country only a few times to visit her mother and attend her mother's funeral in Scotland. She has four U.S. citizen children, three of whom testified on her behalf during removal proceedings that she plays a significant role in their lives and continued well-being. She has taken measures to rehabilitate her alcohol problem by attending Alcoholics Anonymous meetings. She has volunteered for the Senior Citizen Center and Salvation Army in her community. She has taken measures to secure better financial footing by working at restaurants and looking for work at a grocery store. In sum, Cordes is a hard-working, engaged member of society.

---

[7]Of course, the "irrational inequality" necessary to sustain an equal protection challenge, *see dissent* at 10296, is apparent here from the INS' disparate grant of section 212(c) relief. It is the inequity to Cordes, however, that makes the equal protection violation in this case especially severe.

## IV. CONCLUSION

**[14]** We hold that the INS' application of *St. Cyr* and *Velasco-Medina*, which results in the denial of section 212(c) relief for permanent residents, such as Cordes, violates the Equal Protection Clause of the Constitution. We therefore reverse the District Court's denial of Cordes's habeas petition and remand with instructions to grant the writ.

**REVERSED and REMANDED.**

---

RYMER, Circuit Judge, concurring in part and dissenting in part:

It is rational to distinguish between aliens who were deportable and those who were not when they entered a plea of guilty to a crime that IIRIRA retroactively makes an aggravated felony because those who — like Cordes — were *not* deportable could *not* have relied on the availability of § 212(c) relief, whereas those who — unlike Cordes — *were* deportable *could* have relied on that possibility. That's why, in a nutshell, there is no equal protection violation. Accordingly, while I agree that *United States v. Velasco-Medina*, 305 F.3d 839 (9th Cir. 2002), forecloses Cordes's claim that she is eligible for § 212(c) relief under *INS v. St. Cyr*, 533 U.S. 289 (2001), and that the retroactive application of IIRIRA's definition of aggravated felony to render her deportable did not violate due process, I disagree that Cordes's ineligibility for § 212(c) relief violates equal protection.

First, the majority concludes that Cordes as a lawful permanent resident is similarly situated to those permanent residents who are entitled to § 212(c) relief under *St. Cyr*. This is not so, because she and Velasco-Medina were not deportable and did not rely on availability of § 212(c) relief when they pled guilty. Second, the majority holds that the disparate treatment

of Cordes and those permanent residents who are entitled to § 212(c) relief under *St. Cyr* lacks a rational basis. It doesn't, because it is not wholly irrational to preserve § 212(c) relief for those who relied on the availability of a discretionary waiver to avoid deportation.

The majority believes that it is not rational to allow lawful permanent residents who have "committed worse crimes than Cordes" to apply for § 212(c) relief while denying her the same opportunity.[1] Maj. op. at 10290. However, this is not the reason that Cordes is ineligible for § 212(c) relief. Under the law in effect at the time of Cordes's guilty plea, a lawful permanent resident who suffered a conviction for a deportable offense might have had the opportunity of applying for § 212(c) relief. Cordes did not have this opportunity at the time she pled guilty because she didn't need it: her conviction did not render her deportable. In other words, Cordes was no worse off and, indeed, was much better situated, than a lawful permanent resident convicted of a deportable offense. This is because she was not deportable and was entitled to stay in this country, whereas the deportable lawful permanent resident could only remain if granted § 212(c) relief. It is hard to imagine a lawful permanent resident preferring to be eligible for § 212(c) relief from deportation, to not being deportable at all. In short, Cordes was not deportable and so was not similarly situated to a lawful permanent resident who was deportable.

---

[1]This is not what Cordes argues, although the bottom line is the same. Based on the statutory scheme, Cordes argues that it is irrational for the law to treat lawful permanent residents with two convictions for a crime involving moral turpitude better than it did her, with only one such conviction. *See* 8 U.S.C. § 1251(a)(2)(A)(ii) (1995). She also argues that she was treated worse than aliens with a conviction for a crime involving moral turpitude who departed the country and returned. This argument also fails because aliens with a conviction who departed were at risk of being denied reentry because they were considered inadmissible. *See* 8 U.S.C. § 1182(a)(2)(A)(i) (1995). Cordes was not at risk of deportation at the time of her conviction, and therefore did not need to apply for § 212(c) relief and could not reasonably have relied upon its availability.

It follows from *St. Cyr* and *Velasco-Medina* that in these circumstances, Cordes's ineligibilty for § 212(c) relief is not "wholly irrational" and does not offend equal protection. *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) (citation and internal quotation marks omitted). *St. Cyr* preserves eligibility for § 212(c) relief for some lawful permanent residents even after IIRIRA reclassified their convictions as aggravated felonies when the retroactive application of IIRIRA to deny eligibility for discretionary waiver would "attach[ ] a new disability, in respect to transactions or considerations already past." *St. Cyr*, 533 U.S. at 321 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)). This would be so, for example, with respect to those whose guilty plea (before IIRIRA) would have made them deportable and who could have relied on continuing to be eligible for § 212(c) relief after IIRIRA. However, as we hold in this case, IIRIRA does not have an impermissible retroactive effect as applied to Cordes because she could not have pled guilty in reliance on eligibility for § 212(c) relief. *Velasco-Medina*, 305 F.3d at 849-50. It is perfectly rational for a lawful permanent resident's eligibility for § 212(c) relief after IIRIRA has reclassified her crime of conviction as an aggravated felony to turn on whether she relied on the possibility of § 212(c) relief when she entered into a plea agreement.

*Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981), and *Servin-Espinoza v. Ashcroft*, 309 F.3d 1193 (9th Cir. 2002), which the majority says "are relevant authority here," maj. op. at 10291, have nothing to do with this case. Both determined that it was irrational for the law to prefer excludable over deportable aliens with respect to § 212(c) relief, but reliance was not a factor in either situation. Even though *St. Cyr* and *Velasco-Medina* might allow permanent residents who have committed "worse crimes" than Cordes to remain eligible for § 212(c) relief, this is only because they — unlike Cordes — pled in reliance on such relief.

Finally, equity may well "weigh[ ] in favor of" allowing Cordes a shot at § 212(c) relief, as the majority says, maj. op.

at 10292, but equal protection turns on irrational inequality, not inequity. It is not wholly irrational to save the opportunity of applying for a discretionary waiver of deportation for lawful permanent residents who were deportable when they pled guilty to a crime that was reclassified as an aggravated felony and relied on its continuing to be available, but not to create an opportunity for those who were not deportable and had no reason to rely upon the possibility of applying for a waiver when they entered a plea.

I would affirm across the board.